UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| COASTAL LAWN CARE INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00603-SDN |
| | ) | |
| RICHARD WRIGHT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT NANCY WRIGHT'S MOTION TO DISMISS**

In this matter, Plaintiffs Coastal Lawn Care Inc. ("Coastal") and Craig Wright sue Defendants Richard Wright—Craig's brother—and Nancy Meuser Wright, Richard's ex-wife.[1] ECF No. 1. Plaintiffs allege breach of contract against Richard Wright (Count I), and unjust enrichment against both Defendants (Count II), based on a Promissory Note executed in 2018 governing a loan of money from Coastal to Richard. *Id.* at 6–8. Defendant Nancy Wright moves to dismiss Count II against her, arguing primarily that this Court lacks specific personal jurisdiction over her. ECF No. 12. For the reasons that follow, Nancy's motion to dismiss is **GRANTED**.

**FACTUAL BACKGROUND**[2]

Plaintiff Coastal is a Maine corporation located and doing business in Cumberland, Maine, and Plaintiff Craig Wright has wholly owned and operated Coastal since 1990. ECF No. 1 at ¶¶ 1–2. Defendants Richard Wright and Nancy Meuser Wright are individuals

[1] For ease of reading, the Court will refer to the individual parties by their first names.

[2] At this juncture, the Court derives the following facts from Plaintiffs' complaint, ECF No. 1, accepts them as true, and draws all reasonable inferences in their favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

residing in Old Greenwich, Connecticut, and were married from 1993 until their divorce in July 2025. *Id.* ¶¶ 3–4. Craig and Richard are brothers. *Id.* ¶ 2. Throughout their marriage, Defendants "maintained an expensive lifestyle;" Richard worked in the financial services industry and previously told Craig he had an annual income of between three and five million dollars. *Id.* ¶ 8. The former couple also received a secondary source of income from Nancy's status as a beneficiary of a trust established by her father. *Id.* ¶ 9.

Sometime in 2018, Richard approached Craig seeking a loan for emergency financial assistance based on the couple's "temporary" financial difficulties in paying bills related to their home, vehicles and general living expenses. *Id.* ¶ 10. On December 18, 2018, Richard executed the Promissory Note (the "Note") governing a loan from Coastal to Richard in the amount of $327,742.87. *Id.* ¶¶ 12–13; *see* ECF No. 3 (Promissory Note). The Note charged an interest rate of 1.5% per year and required Richard to make annual interest payments of $4,916.14, with the entire principal balance due on January 1, 2022. ECF No. 1 ¶ 14. The Note neither names Nancy nor imposes any obligation on her, though Plaintiffs assert "Nancy was grateful for the loan and approved of it." *Id.* ¶ 11. Richard did not make any annual interest payments in 2019, 2020, or 2021. ECF No. 1 ¶ 15. During this same time, Defendants "repeatedly" used funds from Note to pay off the balance of their credit card. *Id.* ¶ 16.

On August 31, 2021, Defendants sent a money order for $100 with a memorandum line stating "Loan Repay." *Id.* ¶ 18.[3] When full repayment on the Note came due on

[3] Although Plaintiffs allege both Richard and Nancy sent Craig the August 31, 2021, money order, ECF No. 1 ¶ 18, this assertion is contradicted by an exhibit attached to Plaintiffs' complaint. The money order receipt submitted as Exhibit ECF No. 3-1 shows the $100 payment issued solely by Richard, not Nancy. For purposes of this motion, the Court therefore treats the August 31, 2021, payment as having come from Richard alone. *See Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022) (prima facie showing of personal jurisdiction "must be based on evidence of specific

January 1, 2022, Defendants failed to make any payment and when Craig demanded repayment, Defendants assured him payment was forthcoming. *Id.* ¶ 19. Following this default, Craig continued to request payment of the overdue principal and interest into 2023. *Id.* ¶ 20. As of the filing of this case, the $100 payment in August 2021 remains the only payment made toward the balance on the Note. *Id.* ¶ 21. The Note additionally contains a late payment provision which authorizes Craig to assess a late fee of $0.06 per dollar owed for any payment more than 30 days overdue—which in this case includes a total of seven unpaid principal and annual interest payments. *Id.* ¶ 22.

Sometime in 2024, the Defendants informed Craig they were going to file for divorce and as part of that process, they intended to divide equally between them the repayment obligation under the Note to Craig. *Id.* ¶ 24. In August 2024, Nancy sent Craig the following text message: "Craig, I feel very bad that you have not been paid back. Our divorce is a very sad situation. I am hopeful to part ways with Richard in a constructive manner that leaves us both with the opportunity for a fresh start and yes in my mind that would include you getting paid back." *Id.* ¶ 25 (quotation modified); *see* ECF No. 3-3. In reliance on Nancy's text message, Craig "forbore from legal action to collect the debt." ECF No. 1 ¶ 25. Despite Nancy's message, Defendants' July 2025 divorce judgment included a stipulation assigning full responsibility for the debt to Richard. *Id.* ¶ 26; ECF No. 3-4 ¶ 7.3 ("The Husband [Richard] shall be solely responsible for, pay, indemnify, and hold the Wife [Nancy] harmless against any and all of his individual liabilities, including but not limited to the loan from his brother, Craig Wright."). As non-parties to the

facts set forth in the record") (quotation modified); *LP Sols., LLC v. Duchossois*, No. 18-cv-25, 2018 WL 1768037, at *8 (D. Me. Apr. 11, 2018) (under prima facie method, court accepts facts alleged by plaintiff "so far as the record evidence supports them").

Defendants' divorce proceedings in Connecticut, Plaintiffs took no part and did not agree to this arrangement. *See* ECF No. 1 ¶ 27.

On August 28, 2025, Mr. Scott Meuser (Nancy's brother) emailed Craig and represented he would repay Nancy's half of the principal amount owed in exchange for her release from any further liability on the debt and "an assurance by Craig that if Richard repaid the entire principal amount of the debt, Craig would return [the] payment." *Id.* ¶ 29. Craig responded with a proposed release, which prompted Scott to instruct his business associate to move forward with a wire payment in the amount of $163.871.00. *Id.*; *see* ECF No. 3-5 at 4. Despite this communication, no payment has yet been made to Craig by or on behalf of Nancy. ECF No. 1 ¶ 30. On October 31, 2025, Richard received written notice of his default and failed to cure the default within 30 days as permitted by the terms of the Note. *Id.* ¶ 32. At present, the total outstanding balance due under the terms of the Note, including unpaid principal and interest in addition to late payment fees, and after a $100 credit for the Defendants' singular payment, stands at $378,574.09. *Id.* ¶¶ 23, 33.

**DISCUSSION**

On January 12, 2026, Defendant Nancy Wright moved to dismiss Count II against her, arguing in part that the Plaintiffs' complaint does not establish this Court's personal jurisdiction over her, and alternatively that Plaintiffs have failed to state a plausible claim of unjust enrichment upon which relief can be granted. ECF No. 12. In response, Plaintiffs assert this Court may exercise specific personal jurisdiction over Nancy based primarily on Nancy's contacts with and purposeful availment of the forum state of Maine and additionally argue their complaint has stated a plausible claim of unjust enrichment upon which this Court may grant relief. ECF No. 14. Based on the foregoing analysis, the Court

finds it must dismiss Plaintiffs' claim of unjust enrichment against Nancy (Count II) because it lacks specific personal jurisdiction over her.

## I. Personal Jurisdiction

When a defendant challenges personal jurisdiction before filing an answer, the plaintiff bears the burden of establishing that jurisdiction exists. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). In this matter, Plaintiffs need only make a prima facie showing of personal jurisdiction. *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 79 (1st Cir. 2013) (quoting *Phillips*, 530 F.3d at 26).[4] This approach does not require the Court to "credit conclusory allegations or draw farfetched inferences," but instead requires the showing of personal jurisdiction to "be based on evidence of specific facts in the record." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022) (quotation modified).

### *1. General Standard*

Personal jurisdiction is a fundamental requirement that grants a court the power to compel parties to obey its decrees. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001). When assessing whether a non-resident defendant is subject to personal jurisdiction, a federal court sitting in diversity functions as the equivalent of a

[4] In addition to their complaint, Plaintiffs also proffered supporting documents as exhibits, including copies of the Promissory Note, a receipt of the August 2021 money order, the Connecticut divorce settlement, and various communications regarding repayment of the loan. ECF No. 3. The Court accordingly credits and considers the Plaintiffs' supporting evidence as part of their prima facie showing of this Court's personal jurisdiction over Nancy. *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 79 (1st Cir. 2013) ("The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing.").

state court in the forum state. *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005). Consequently, the Court must first determine if the defendant's forum contacts satisfy both the forum state's long-arm statute and the requirements of the Fourteenth Amendment's Due Process Clause. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Because Maine's long-arm statute extends to the maximum limits of the Due Process Clause, 14 M.R.S. § 704-A(1) (2025), the constitutional inquiry effectively defines the limits of the Court's personal jurisdiction, *Hansen v. Homesite Ins. Co. of the Midw.*, No. 24-cv-00278, 2025 WL 1865957, at *14 (D. Me. July 7, 2025). The Due Process Clause recognizes two types of personal jurisdiction: general and specific. Here, Plaintiffs have conceded Ms. Wright cannot be considered "at home" in Maine. *Pls.' Resp.*, ECF No. 14 at 4 ("Because Nancy is domiciled in Connecticut, general jurisdiction is not at issue."); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (courts may exercise general jurisdiction over defendant where defendant's contacts are "so continuous and systematic as to render them essentially at home in the forum state.") (quotation modified). Accordingly, if the Court may exercise personal jurisdiction over Ms. Wright, it must do so under a theory of specific, rather than general, jurisdiction.

The First Circuit applies a tripartite analysis to determine whether sufficient minimum contacts exist between the defendant and the forum state to support the exercise of specific personal jurisdiction. To exercise specific personal jurisdiction over Nancy, the Court must find: (1) Nancy's in-state contacts "represent a purposeful availment of the privilege of conducting activities" in Maine; (2) the Plaintiffs' claim arises directly from or relates to Nancy's activities in Maine; and (3) exercise of personal jurisdiction over Nancy must be reasonable. *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 95 (1st Cir. 2024) (quotation modified). The Plaintiffs' "[f]ailure to make

any one of these showings dooms any effort to establish specific personal jurisdiction." *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 59 (1st Cir. 2020); *see Dillon Boiler Servs., Co. v. Soundview Vt. Holdings, LLC*, 392 F. Supp. 3d 187, 191 (D. Mass. 2019) (granting motion to dismiss for lack of personal jurisdiction based only on finding of no purposeful availment without consideration of other factors).

*2. Purposeful Availment*

To establish purposeful availment on the part of the defendant, the plaintiff must make a prima facie showing the defendant had "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Stokinger v. Armslist, LLC*, 166 F.4th 229, 233 (1st Cir. 2026). Specifically, Plaintiffs must show Ms. Wright "deliberately targeted [her] behavior toward the society or economy of the forum such that the forum should have the power to subject [her] to judgment regarding that behavior." *Id.* at 234. (quotation modified). Plaintiffs must also identify contacts demonstrating Ms. Wright expressly aimed her conduct at the forum state, thereby making the forum state the focal point of her activity. *See Accessories Ltd. of Me., Inc. v. Longchamp U.S.A.*, 170 F. Supp. 2d 12, 15 (D. Me. 2001). This requires a focus on both the voluntariness of Ms. Wright's actions and foreseeability such that she would "reasonably anticipate being haled into court" in the forum state. *Stokinger*, 166 F.4th at 234. This focus prevents the exercise of personal jurisdiction over defendants based on their "random, fortuitous, or attenuated contacts" with the forum state. *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)).

First, nearly all conduct giving rise to Plaintiffs' claims occurred as a result of Richard's affirmative conduct aimed toward Plaintiffs in Maine—not Nancy's. Plaintiffs

allege Richard alone approached Craig seeking financial assistance in the form of a loan from Coastal, negotiated the terms of the Note, and signed the Note, which obligated only Richard to repay the loan. Based on the record properly before the Court, the only example of Nancy's affirmative, voluntary conduct directed toward Plaintiffs and the forum state of Maine are her August 2024 texts to Craig regarding repayment of the loan balance following her divorce from Richard. *See* ECF No. 1 ¶ 25; ECF No. 3-3.

Plaintiffs raise several additional examples of Nancy's purported purposeful availment of Maine, including her negotiation of the couple's divorce settlement in Connecticut, which they contend "directly impacted the Plaintiffs in Maine" and was conducted "while she was fully aware that the Plaintiffs expected the divorce decree to include repayment of the entire loan amount." ECF No. 14 at 7. The Court finds this argument unpersuasive. A divorce settlement negotiated in Connecticut is far too attenuated to establish Nancy's purposeful availment of Maine and, in any event, its terms merely confirm what the record has already made plain: Richard alone incurred the repayment obligation to Plaintiffs under the Note. *See* ECF No. 3-4 ¶ 7.3 ("The Husband [Richard] shall be solely responsible for, pay, indemnify, and hold the Wife [Nancy] harmless against any and all of his individual liabilities, including but not limited to the loan from his brother, Craig Wright.").

Plaintiffs also allege Nancy's brother, Scott Meuser, affirmatively communicated with Craig in August 2025 concerning "repayment of Nancy's half of the debt," including Scott's instruction to his business associate to move forward with payment in the amount of $163,871 to Craig. ECF No. 1 ¶¶ 28–29; *see* ECF No. 3-5. Plaintiffs further assert Nancy "directed her brother (her agent) to engage in negotiations with Craig in Maine about a possible repayment before she ultimately thwarted those negotiations, thereby causing

harm to the Plaintiffs (in Maine)" and constituting conduct aimed at the forum state. ECF No. 14 at 7. Nothing in the record supports the contention that Nancy directed or was involved in Scott's communications with Craig, however. The actions of the third party here (Scott) are too attenuated and indirect to support a finding that Nancy deliberately targeted the state of Maine. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (voluntariness requires the defendant's contacts with the forum state "proximately result from actions by the defendant [herself]")*; Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008) (finding a defendant's contacts with the forum state "must be deliberate, and "not based on the unilateral actions of another party" to establish foreseeability).

The crux of Plaintiffs' position seemingly rests on their argument that "it is hard to imagine how a defendant that borrows money from a Maine resident could not foresee that she would be sued in Maine if she did not repay those funds." ECF No. 14 at 7. But this argument betrays the flaw inherent in Plaintiffs' position: Nancy did not borrow the funds at issue, negotiate the Note, or sign it. Nancy therefore did not purposefully avail herself of "the privilege of conducting activities in [Maine], thereby invoking the benefits and protections of [Maine]'s laws," making her involuntary presence before this Court foreseeable. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60–61 (1st Cir. 2002) (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1st Cir. 1995)).

Even if Plaintiffs had indeed entered into a contract with Nancy, a defendant's mere act of contracting with a plaintiff in another state is ordinarily insufficient, without more, to establish foreseeability and thus the purposeful availment of the plaintiff's home state on the part of the defendant. *See, e.g.*, *LP Sols., LLC v. Duchossois*, No. 18-cv-25, 2018 WL 1768037, at *8 (D. Me. Apr. 11, 2018) (finding fact that "defendants knowingly

entered into contracts with a Maine entity" was not enough to establish foreseeability prong of purposeful availment); *Prairie Eye*, 530 F.3d at 29 ("It stretches too far to say that [defendant], by mailing a contract with full terms to [the plaintiff in] Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts."). The argument presented by Plaintiffs here is even more attenuated, as Nancy did not contract with Plaintiffs or any other Maine entity.

Because Plaintiffs have not made a prima facie showing that Nancy purposefully availed herself of the privilege of conducting activities in Maine, the Court finds it lacks personal jurisdiction over her and need not address the remaining two factors of the specific personal jurisdiction inquiry. *See, e.g.*, *Dillon Boiler Servs.*, 392 F. Supp. 3d at 191; *Rollick v. Palmer*, No. 25-cv-00589, 2026 WL 657202, at *2 (D.R.I. Mar. 9, 2026).

The Court nonetheless finds the remaining factors—relatedness and reasonableness—both likewise counsel against the exercise of personal jurisdiction over the Defendant. In cases "in which the [defendant's] alleged contacts are less tangible than physical presence," courts have found "a natural blurring of the relatedness and purposeful availment inquiries." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). Because the Plaintiffs' claims "sound in contract," to assess relatedness, the Court looks to whether "the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'" *Adams v. Adams*, 601 F.3d 1, 6 (1st Cir. 2010) (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)). Because Nancy was not party to the contract with Plaintiffs, the Court finds Nancy's activity in Maine was neither instrumental to the formation of the contract, nor was she subject to "substantial control and ongoing connection" to Maine in the performance of

the contract. *Id.* (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008)). Finally, on the question of reasonableness, the Court finds that exercising personal jurisdiction over Nancy and forcing her to litigate a case in Maine, a state in which she has no residence or connection to, over a loan contract of which she did not negotiate or sign would be unreasonable and fail to comport with the necessary "traditional notions of fair play and substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996) (quotation modified).

By finding that it lacks personal jurisdiction and dismissing Plaintiffs' claim on that ground, the Court therefore does not reach Nancy's remaining arguments that Plaintiffs fail to state a plausible claim of unjust enrichment upon which relief may be granted. *See, e.g., Supplement Edge, Inc. v. One Brands, LLC*, No. 20-cv-00348, 2021 WL 787135, at *1 (D. Me. Mar. 1, 2021) (dismissing amended complaint by finding lack of personal jurisdiction over defendant dispositive and declining to address defendant's argument that plaintiff failed to state a plausible claim for relief).

## CONCLUSION

For the foregoing reasons, Ms. Nancy Wright's motion to dismiss, ECF No. 12, is **GRANTED**. Plaintiff's sole claim against Ms. Wright (Count II) is **DISMISSED**. Plaintiffs' remaining claims against Defendant Richard Wright may proceed.

**SO ORDERED.**

Dated this 18th day of September, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**